UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AGRI-BEST HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 6980 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| THE ATLANTA CATTLE EXCHANGE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Agri-Best Holdings, LLC, brought this diversity action against The Atlanta Cattle Exchange, Inc. ("TACE"), alleging that TACE failed to pay for large quantities of meat products. The complaint asserts state law claims for breach of contract, account stated, and quantum meruit, and seeks over one million dollars in damages, costs, and interest. TACE has moved to dismiss, arguing that Agri-Best is not the real party in interest, that the court lacks personal jurisdiction over TACE, and that venue is improper in this District. Agri-Best opposes TACE's motion and—hedging its bets on the real-party-in-interest issue—moves to join Wells Fargo National Association under Fed. R. Civ. P. 17(a)(3) as an additional party plaintiff. TACE's motion to dismiss is denied. Agri-Best's motion to join Wells Fargo as an additional plaintiff is construed as a motion to substitute Wells Fargo as the sole plaintiff and, as so construed, is granted.

I.   **Real Party in Interest**

On October 5, 2010, Agri-Best voluntarily sought Chapter 11 bankruptcy protection. *In re Agri-Best Holdings, LLC*, No. 10-44595 (Bankr. N.D. Ill.). Weeks later, on October 29, 2010,

Agri-Best filed this lawsuit; attached to the complaint is a log of invoices allegedly showing TACE's indebtedness to Agri-Best. Doc. 1 at 5-11. On November 12, 2010, Wells Fargo moved the bankruptcy court for relief from the automatic stay under 11 U.S.C. § 362(d)(1), arguing that Agri-Best had a credit and security agreement with Wells Fargo, that Agri-Best was indebted to Wells Fargo for $14,562,401.11, that the debt was secured by all of Agri-Best's assets (which include the receivables allegedly owed by TACE), and that with an immaterial exception Wells Fargo was Agri-Best's primary secured creditor. The motion further argued that Agri-Best was winding down and unable to execute an effective reorganization, that Wells Fargo was being harmed by the continuing depreciation of the collateral held by Agri-Best, and that neither Agri-Best nor the bankruptcy estate had any use for the collateral.

On November 17, 2010, the bankruptcy court granted Wells Fargo's motion, allowing it to exercise its rights to the collateral and to apply the proceeds to satisfy its claim against Agri-Best:

> The automatic stay is terminated as to Wells Fargo to enable Wells Fargo to (a) exercise its respective rights and remedies with respect to the Collateral in accordance with the Uniform Commercial Code and other applicable law, (b) to sell or otherwise dispose of the Collateral, and (c) apply the proceeds of the Collateral on account of its … claim(s) in accordance with and subject to the restrictions of 11 U.S.C. § 506(b).

Doc. 29-1 at 14. On November 24, 2010, the bankruptcy court converted Agri-Best's bankruptcy from Chapter 11 reorganization proceedings to Chapter 7 liquidation proceedings. *Id*. at 17-18. Two months later, Wells Fargo notified TACE of its relief from the automatic stay. *Id*. at 20. The notice stated, "Pursuant to the terms of its security agreement with [Agri-Best] and the provisions of Section 9-607 of the Uniform Commercial Code, Wells Fargo is entitled to enforce payment of and collect all accounts receivable of [Agri-Best]. The Chapter 7 Trustee

appointed in [Agri-Best's] Chapter 7 Proceeding is not collecting the accounts receivable of [Agri-Best]." *Ibid*. The notice instructed TACE that it should direct all further payments to Wells Fargo, not to Agri-Best, and that absent a court order, payments to any other entity would not satisfy TACE's indebtedness. *Ibid*.

The question here is whether Agri-Best, Wells Fargo, neither, or both are real parties in interest entitled to pursue this litigation. Agri-Best plainly is not a real party in interest, as the law very clearly holds that a Chapter 7 debtor has no ability to pursue pre-petition legal claims, which by operation of law become property of the bankruptcy estate. *See Matthews v. Potter*, 316 Fed. Appx. 518, 521 (7th Cir. 2009); *Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 472-74 (7th Cir. 1999). The governing cases say that the Chapter 7 trustee has the *exclusive* right to pursue claims on behalf of the estate, which would appear to cast doubt on Wells Fargo's ability to step in as a real party in interest. *See Matthews*, 316 Fed. Appx. at 521 ("only the trustee, as the real party in interest, has standing to sue"); *Cable*, 200 F.3d at 472 ("In liquidation proceedings, *only* the trustee has standing to prosecute or defend a claim belonging to the estate."); *In re Perkins*, 902 F.2d 1254, 1257 (7th Cir. 1990). But that general principle yields where, as here, a creditor is given relief from the automatic stay to exercise its rights to the debtor's pre-petition assets, including the debtor's pre-petition legal claims. *See MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc.*, 882 F.2d 615, 618-19 (2d Cir. 1989) ("[t]he effect of lifting the automatic stay is … to allow [the Chapter 7 bankrupt's secured creditor] to pursue" pre-petition account debtors of the bankrupt); *Pioneer Commercial Funding Corp. v. United Airlines, Inc.*, 122 B.R. 871, 878 (S.D.N.Y. 1991); *In re Metropolitan Hosp.*, 110 B.R. 731, 740 n.14 (Bankr. E.D. Pa. 1990) (discussing *MNC Commercial*); *Matter of Astro-Netics*, 28 B.R. 612, 614 (Bankr. E.D. Mich. 1983) ("On December 16, 1983, this Court lifted the

automatic stay and permitted [the Chapter 7 debtor's secured creditor] to collect the [Chapter 7] Debtor's accounts receivable directly from the [Chapter 7 debtor's] account debtors."); *see generally In re Incor, Inc.*, 100 B.R. 790, 791 (Bankr. D. Md. 1989) ("a collection suit brought by a secured creditor against an account debtor of a Chapter 7 debtor to collect prepetition and postpetition receivables, after the modification of the automatic stay allowed the secured creditor to enforce its rights as to its collateral in the receivables," can be heard "in a state court of competent jurisdiction or in a Federal district court based upon diversity of citizenship," but not in the bankruptcy court), *aff'd*, 113 B.R. 212 (D. Md. 1990).

All this is fairly uncontroversial; indeed, before Agri-Best moved to add Wells Fargo as a party plaintiff (Doc. 31), TACE acknowledged that Wells Fargo could properly pursue this litigation as the real party in interest. Doc. 23 at 2 ("Since Wells Fargo … appears to be the real party in interest, this case cannot proceed. Rather, Wells Fargo must make [a] proper appearance as a party and Wells Fargo must establish its independent right to file this action without regard to whether Agri-Best Holdings LLC could have filed this action."). TACE switched gears once Agri-Best moved to add Wells Fargo, and now argues that state law precludes Wells Fargo from continuing this suit. TACE is right to focus on state law, for "whether a claim may be brought by a creditor of a bankrupt corporation outside of the bankruptcy proceedings depends on an analysis of state law"—at least where, as here, the claim arises from state law. *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989); *see also MNC Commercial Corp.*, 882 F.2d at 618.

As noted above, Wells Fargo's notice to TACE asserts that § 9-607 of the Uniform Commercial Code permits it to enforce payment of accounts receivable owed by Agri-Best's account debtors. The provision reads in relevant part:

(a) If so agreed, and in any event after default, a secured party:

(1) may notify an account debtor or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party;

\* \* \*

(3) may enforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the account debtor or other person obligated on collateral to make payment or otherwise render performance to the debtor … .

UCC § 9-607(a); *see* 810 ILCS 5/9-607(a) (Illinois codification of § 9-607(a)). This provision applies here. TACE (allegedly) is Agri-Best's account debtor. Agri-Best defaulted on its indebtedness to its secured creditor, Wells Fargo. Section 9-607 therefore entitled Wells Fargo to notify TACE that it should make payment to Wells Fargo, and when TACE failed to do so, to "enforce the obligations" of TACE and to "exercise the rights" of Agri-Best by pursuing this lawsuit. *See Mecco, Inc. v. Capital Hardware Supply, Inc.*, 486 F. Supp. 2d 537, 541 & n.7, 546 (D. Md. 2007) (secured creditor directly sued its debtor's account debtor to recover value of receivables under § 9-607); *Wells Fargo Bank Nat'l Ass'n v. Kal-Rich, Inc.*, 2010 WL 1740603, at *2-3 (Mass. App. Apr. 26, 2010) (same); 4 James J. White & Robert S. Summers, *Uniform Commercial Code* § 34-5 (6th ed. 2010) ("A creditor may lend against various forms of intangible collateral, including earned and executory accounts, chattel paper, general intangibles, and instruments. That is, the debtor may assign to the creditor as security the debtor's interest in these rights. When the creditor's collateral consists of rights to payments owed to the debtor by a third party, to 'foreclose' normally means to collect the amounts due from its debtor's debtors—from the third party 'account debtors.' If a car dealer goes into bankruptcy, the bank

will exercise its rights under 9-607 to collect the amounts due the dealer from the consumer who bought the car from the dealer.").

The lone case authority cited by TACE, *United States f/u/b/o Allied Building Products Corp. v. Federal Insurance Co.*, 729 F. Supp. 477 (D. Md. 1990), is not to the contrary. *Allied Building* held that the former UCC § 9-502—the predecessor to the current § 9-607—did not permit a secured creditor to pursue litigation against its debtor's account debtor. *Id.* at 479. But as the drafters explained a decade later when revising Article 9, the current § 9-607 grants rights to secured creditors beyond the rights provided by the former § 9-502, including the right to judicially enforce obligations owed by account debtors of the secured creditor's debtor:

> The scope of this section [9-609] is broader than that of former Section 9-502. It applies not only to collections from account debtors and obligors on instruments[,] but also to enforcement more generally against all persons obligated on collateral. It explicitly provides for the secured party's enforcement of the debtor's rights in respect of the account debtor's (and other third parties') obligations and for the secured party's enforcement of supporting obligations with respect to those obligations. … The rights of a secured party under subsection (a) include the right to enforce claims that the debtor may enjoy against others.

UCC § 9-607, Official Comment 3 (2002). *Allied Building*, having been decided prior to the revisions to Article 9, does not reflect the scope of the current § 9-607.

Finally, Wells Fargo's ability to pursue this action in Agri-Best's stead is not defeated by the fact that the automatic stay was lifted while the bankruptcy proceedings were in Chapter 11, before the conversion to Chapter 7. As the Eleventh Circuit cogently explained, conversion from one chapter to another after the automatic stay is lifted does not have the effect of reimposing the stay. *See In re State Airlines, Inc.*, 873 F.2d 264, 267-69 (11th Cir. 1989); *see also In re Ramirez*, 188 B.R. 413, 414-15 (9th Cir. BAP 1995) ("If a new automatic stay were to arise upon conversion of a … case[,] a Chapter 13 debtor could effectively avoid the terms of an earlier

order lifting the automatic stay by simply filing a Notice of Conversion."); *Michaelesco v. United States*; 410 B.R. 129, 132 (D. Conn. 2009); *In re Germansen Decorating, Inc.*, 149 B.R. 522, 527 n.7 (Bankr. N.D. Ill. 1993); 2 *Bankruptcy Litigation* § 12:102 ("If a creditor obtains an order for relief from the automatic stay and the case is subsequently converted to a different chapter, conversion of the case does not moot the effect of the order granting the creditor relief.") (citing cases).

For these reasons, Wells Fargo, as a real party in interest in its capacity as Agri-Best's primary secured creditor, may pursue this litigation against TACE. The only remaining question is whether Wells Fargo should be added as a plaintiff, leaving Agri-Best in the case, or substituted for Agri-Best as the sole plaintiff. As noted above, because Agri-Best is in Chapter 7 proceedings, it may not pursue this case, which means that substitution is the appropriate course. Accordingly, the court construes Agri-Best's Rule 17(a)(3) motion to join Wells Fargo as an additional party plaintiff as a motion to substitute Wells Fargo for Agri-Best as the sole plaintiff, and grants the motion as so construed. *See Wolfe v. Gilmour Mfg. Co.*, 143 F.3d 1122, 1126-27 (8th Cir. 1998); *Inghram v. Taskin, Inc.*, 2008 WL 295078, at *1 (C.D. Ill. Jan. 31, 2008); *Tate v. Snap-On Tools Corp.*, 1997 WL 106275, at *8 (N.D. Ill. Feb. 11, 1997); *Nanz Trustee Inc. v. Am. Nat'l Bank & Trust Co.*, 423 F. Supp. 930, 931 (E.D. Wis. 1977). This action will "proceed[] as if it had been originally commenced by [Wells Fargo,] the real party in interest." Fed. R. Civ. P. 17(a)(3).

## II.     Personal Jurisdiction and Venue

TACE makes a perfunctory challenge to personal jurisdiction. Because this is a diversity case, the court has personal jurisdiction over TACE only to the extent an Illinois state court would. *See Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). The

Illinois long-arm statute permits a court to exercise personal jurisdiction "on any … basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). Because "there is no operative difference between these two constitutional limits," a court evaluating a Rule 12(b)(2) motion asks "whether the exercise of personal jurisdiction would violate federal due process." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (citations omitted).

"Under the Supreme Court's well-established interpretation of the Fourteenth Amendment's due process clause, a defendant is subject to personal jurisdiction in a particular state only if the defendant had certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Ibid*. (citation and internal quotation marks omitted). The Supreme Court has "framed the constitutional inquiry in terms of whether the defendant purposefully avails itself of the benefits and protections of conducting activities in the forum state." *Id*. at 444 (internal quotation marks omitted). To be subject to personal jurisdiction, "[t]he defendant's contacts must not be merely random, fortuitous, or attenuated; rather, the 'defendant's conduct and connection with the forum state' must be such that it should 'reasonably anticipate being haled into court there.'" *Citadel Grp.*, 536 F.3d at 761 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)).

"Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts." *Mobile Anesthesiologists Chicago*, 623 F.3d at 444. Only specific jurisdiction need be considered here. Specific jurisdiction exists "for controversies that arise out of or are related to the defendant's forum contacts." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). When the defendant's contacts with the forum concern a contractual

relationship, the court must "consider the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contact and the parties' actual course of dealing' in determining whether there were sufficient minimum contacts." *Citadel Grp.*, 536 F.3d at 761 (quoting *Burger King*, 471 U.S. at 479). A defendant's solicitation of business with the plaintiff is a factor supporting jurisdiction, even where the solicitation "amounted to no more than a single communication that initiated negotiations of the transaction at issue." *Madison Consulting Grp. v. South Carolina*, 752 F.2d 1193, 1203 (7th Cir. 1985). And where, as here, the parties have engaged in a long-term business relationship, contacts that are "individually insignificant" can be "collectively important." *Citadel Grp.*, 536 F.3d at 764.

Agri-Best and TACE submitted affidavits from their respective principals averring to particular aspects of their relationship. In the absence of an evidentiary hearing (none was requested), the court must accept Agri-Best's undisputed factual averments and resolve all factual disputes in its favor. *See uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010); *Diamond Mortg. Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1245 (7th Cir. 1990); *Saylor v. Dyniewski,* 836 F.2d 341, 342 (7th Cir. 1988). The relevant facts are as follows. Agri-Best's principal place of business is in Chicago. TACE initiated contact with Agri-Best to supply TACE with meat products because no other supplier would give TACE the payment terms it desired. Agri-Best and TACE negotiated the contractual terms (price, product, and shipping) long distance from their respective places of business. Over the course of the parties' four-year relationship, TACE placed "a constant stream of telefaxed or email orders"; Agri-Best cut and packaged individually wrapped portions of beef, chicken, and pork pursuant to TACE's specifications, and shipped the meat to TACE sites in Georgia and elsewhere in "boxes provided by TACE with TACE artwork on the outside." Doc. 29-1 at 22-23. TACE made payment

"either by wire or check from TACE to Agri-Best in Illinois." *Id*. at 23. On two occasions, TACE's CEO met with Agri-Best's CEO in Illinois and, while at Agri-Best's site, "review[ed] the facilities and product" and engaged in "discussions … regarding [TACE's] request for revised payment terms, and [Agri-Best's] requests for prompter payments." *Ibid*.

These contacts are more than sufficient to permit the exercise of specific jurisdiction over TACE in this case. *See Citadel Grp.*, 536 F.3d at 764 (contractual relationship between out-of-state defendant and in-state plaintiff sufficient where significant portion of contract performance was conducted in forum state, even though defendant never visited forum state); *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 580-81 (7th Cir. 1994) (prior telephone negotiations and single meeting in forum state leading to the defendant's purchase of steel subjects defendant to personal jurisdiction); *Heritage House Rests., Inc. v. Cont'l Funding Grp., Inc.*, 906 F.2d 276, 283-84 (7th Cir. 1990) (finding personal jurisdiction where defendants "reached out" to plaintiffs through telephone calls and mailings); *Abbott Labs., Inc. v. BioValve Techs., Inc.*, 543 F. Supp. 2d 913, 920-25 (N.D. Ill. 2008) (personal jurisdiction proper where defendant was "active purchaser" engaged in communications with plaintiff over considerable length of time and on multiple occasions sent its employees to meet with plaintiff in forum state to engage in substantive discussions); *Triad Capital Mgmt., LLC v. Private Equity Capital Corp.*, 2008 WL 4104357, at *5 (N.D. Ill. Aug. 25, 2008) ("even when [contract-related] contact takes place only via telephone or email, it can create a substantial connection between the defendant and the forum state"); *Preussag Int'l Steel Corp. v. Ideal Steel & Builders' Supplies, Inc.*, 2004 WL 783102, at *4 (N.D. Ill. Jan. 21, 2004) (due process satisfied where defendant contacted plaintiff by mail and telephone to place orders, dispute invoices, negotiate terms, and submit payment); *Zarky v. Laticrete Int'l, Inc.*, 1982 U.S. Dist. LEXIS 14778, at *19-20 (N.D. Ill. Sept.

1, 1982) ("defendants' contacts with Illinois satisfy the due process prerequisites to the exercise of jurisdiction over them; defendants' solicitation of the contract in Illinois and subsequent negotiations in Illinois by telephone and written correspondence, *inter alia*, establishes the foreseeability of litigation here that is critical to due process analysis").

TACE's challenge to venue is even more perfunctory than its challenge to personal jurisdiction, and is equally without merit, as the facts set forth above show that "a substantial part of the events or omissions giving rise to the claim occurred" in this District. 28 U.S.C. § 1391(a)(2); *see Ace Hardware Corp. v. Expo Grp.*, 2010 WL 2365521, at *2 (N.D. Ill. June 8, 2010); *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 2008 WL 5423553, at *2-3 (N.D. Ill. Dec. 29, 2008).

\* \* \*

For the foregoing reasons, (1) Agri-Best's Rule 17(a)(3) motion to join Wells Fargo as an additional party plaintiff is construed as a motion to substitute Wells Fargo as party plaintiff, and, so construed, is granted, and (2) TACE's motion to dismiss is denied.

August 2, 2011

_____
United States District Judge